IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

MIGUEL HORACIO DIAZ-GARCIA,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civil Case 2:25-CV-125-Z
(Criminal Case 2:23-CR-056-Z-BR-1)

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Miguel Horacio Diaz-Garcia ("Diaz-Garcia") filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. Section 2255 by a person in federal custody. ECF No. 2. Having considered the motion, the response and reply, the record, and applicable authorities, the Court **DENIES** the motion for the reasons stated below.

BACKGROUND

The record in Diaz-Garcia's underlying criminal case, No. 2:23-CR-056-Z-BR-1 (the "CR"), shows the following:

On October 2, 2023, Diaz-Garcia pled guilty to one count of possession with intent to distribute cocaine and aiding and abetting, in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(C) and 18 U.S.C. Section 2. The Presentence Report ("PSR") held Diaz-Garcia accountable for fifty kilograms of cocaine, assigned a total offense level of 35 and calculated a criminal history category of I. CR ECF No. 57-1 ¶¶ 31, 40, 49. His advisory guideline sentencing range was 168 to 210 months. *Id.* ¶ 84.

On February 2, 2024, the Court sustained Diaz-Garcia's objections to the PSR and calculated a new guideline range of 87-108 months. CR ECF No. 97 at 4–14. The Court then sentenced Diaz-Garcia to 108 months of imprisonment, followed by three years of supervised

release. CR ECF No. 71. Diaz-Garcia filed a direct appeal, and on September 17, 2024, the Fifth Circuit dismissed the appeal as frivolous. *See* CR ECF No. 105-1. Diaz-Garcia did not seek further review and timely filed this Section 2255 motion. ECF No. 2. The government responded, alleging that Diaz-Garcia's request for relief is meritless and should be denied. ECF No. 8. Diaz-Garcia filed a reply, disputing the government's contentions. ECF No. 11.

### STANDARD OF REVIEW

After conviction and exhaustion or waiver of a defendant's right to appeal, courts are entitled to presume that the defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164–165 (1982); *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (same). A defendant can challenge his conviction or sentence after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the errors. *Shaid*, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors. "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Section 2255 is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). Stated differently, a writ of habeas corpus will not be allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Further, if a defendant raises issues that are considered on direct appeal, he is precluded from urging the same issues in a later collateral attack. *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v. United States*, 575 F.2d 515, 517–18 (5th Cir. 1978)).

ANALYSIS

To prevail on an ineffective assistance of counsel claim, a movant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697; *see also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) ("Failure to meet either the deficient performance prong or the prejudice prong will defeat a claim for ineffective assistance of counsel."). Simply making conclusory allegations of deficient performance and prejudice does not satisfy the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The likelihood of a different result "must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and a movant must prove counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim is highly deferential—the movant must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Diaz-Garcia alleges that counsel was ineffective on three grounds. Each is addressed below.

**I. Failure to File a Motion to Suppress**

Diaz-Garcia first alleges that counsel was ineffective for failing to file a pretrial motion to suppress based on the legality of the traffic stop that resulted in the discovery of cocaine

in Diaz-Garcia's rental car. ECF No. 2 at 4. He states that the unfiled motion had a "likelihood of being successful based on relevant supporting case law" and would have resulted in him not being indicted because evidence of the cocaine would have been suppressed. *Id.* Specifically, Diaz-Garcia alleges the arresting officer extended the traffic stop without reasonable suspicion, violating his rights under the Fourth Amendment. ECF No. 11 at 7–8. He contends he would not have pled guilty had counsel filed a motion to suppress. ECF No. 11-1 at 52.

"'[O]nce a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived,' and the waiver 'includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea.'" *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) (quoting *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)). A guilty plea waives a claim of pre-plea ineffective assistance unless the defendant shows a reasonable probability he would have pled not guilty but for counsel's deficient performance. *Id.*; *United States v. Palacios*, 928 F.3d 450, 456 (5th Cir. 2019); *see also United States v. Spear*, No. 18-60530, 2022 WL 1565350 (5th Cir. May 18, 2022) (defendant "waives any challenge to nonjurisdictional defects in the pre-plea proceedings by entering a valid guilty plea, including ineffective assistance claims other than those related to the validity of the plea"). In an affidavit attached to his reply brief, Diaz-Garcia alleges that he would have pled not guilty but for his counsel's allegedly deficient performance in failing to file a motion to suppress.[1] ECF No. 11-1 at 52.

---

[1] The Court notes that, in general, a movant may not submit new evidence with a reply brief. *Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 103 (N.D. Tex. 2001). The purpose of a reply brief is to "rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested in the motion." *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991). The reply brief is not an opportunity to submit evidence or make arguments not previously raised in the opening brief. *See Walker v. Apfel*, 180 F.3d 261 (5th Cir. 1999); *Greene v. Toyota Motor Corp.*, 3:11-CV-207-N, 2014 WL 12575962, at *1 (N.D. Tex. May 7, 2014) ("A movant may not submit, and the Court will not consider, new evidence with a reply brief."). However, for the purposes of this

While Diaz-Garcia does not directly assert a Fourth Amendment claim in his Section 2255 motion, the viability of his unfiled motion to suppress is "inextricably intertwined" with his claim of ineffective assistance of counsel for failure to file such motion. *Cavitt*, 550 F.3d at 435. Consequently, the Court must analyze the validity of the stop to determine whether counsel was ineffective for failing to file a motion to suppress.[2] *See id.* The Fifth Circuit "treats allegations of counsel's failure to investigate viable grounds for suppressing evidence, as challenges to the validity of a guilty plea." *United States v. Winchel*, No. 21-10233, 2023 WL 3533884 *2 (5th Cir. May 18, 2023); *United States v. Shepherd*, 880 F.3d 734, 741–46 (5th Cir. 2018) (finding counsel's failure to investigate exculpatory evidence affected voluntariness of plea).

The question before the Court is whether Diaz-Garcia demonstrates a "reasonable probability that, but for counsel's deficiency, he would have insisted on going to trial." *United States v. Richburg*, No. 24-30338, 2025 WL 2254513 (5th Cir. Aug. 7, 2025) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("'[P]rejudice' . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.")). Disturbing the finality of a guilty plea is not favored. "[T]he strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" *Lee v. United States*, 582 U.S. 357, 368–69 (2017) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). For

---

motion, the Court will address the evidence provided by Diaz-Garcia because no response from the government is necessary to resolve the issues raised by the additional evidence.

[2] To warrant an evidentiary hearing, a petitioner must "produce[] independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (*quoting United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)). "Once such independent evidence is presented, '[a] motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.'" *Cavitt*, 550 F.3d at 442 (quoting *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992)). Diaz-Garcia has failed to provide independent indicia of the merit of his allegation; thus, an evidentiary hearing is not required.

this reason, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 369; *see also Richburg,* 2025 WL 2254513 at \*3 (in affirming denial of a Section 2255 motion, court applies *Lee* and notes that "the only real evidence here consists of *post hoc* assertions by [movant] and his prior counsel"); *Ruiz-Gayton v. United States*, No. 20-cv-446-N, 2022 WL 16540681, at \*5 (N.D. Tex. Sept. 16, 2022) (recommending denial of ineffective assistance claim when defendant could not "point to any contemporaneous evidence that demonstrates he would have insisted on going to trial if his trial attorney had filed a motion to suppress").

Diaz-Garcia contends the arresting officer unreasonably detained him, thereby violating his Fourth Amendment rights. A police officer is required to have reasonable suspicion to prolong a detention. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989). If an officer continues to detain a suspect after completing the tasks reasonably related to the initial stop, the stop is "unconstitutionally prolonged unless additional reasonable suspicion arose" within that time. *Cavitt*, 550 F.3d at 436–37 (internal quotation omitted). Reasonable suspicion "exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the . . . seizure." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). The reasonable suspicion "must be based on more than the officer's sense that a detainee appears to have something to hide." *Cavitt*, 550 F.3d at 437. Courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal marks omitted). "Any analysis of reasonable suspicion is necessarily fact-

specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).

The only contemporaneous evidence Diaz-Garcia provided is the police report of his arrest. *See* ECF No. 11-1 at 39 *et seq*. The report shows that, on May 25, 2023, at approximately 3:06 p.m., Texas Highway Patrolman Darrin Bridges ("Bridges") checked the speed of a vehicle and determined it was traveling at 80 miles per hour in a 75 miles per hour zone. *Id.* at 39–40. He stopped the car. *Id.* at 40. Bridges immediately noted that the driver, Diaz-Garcia, "seemed more nervous than most" and his hand was shaking as he held out his drivers' license. *Id.* at 41. Diaz-Garcia told Bridges the car was a rental and showed him the rental contract. *Id.* Bridges noticed an air freshener hanging from the rearview mirror and an object sitting on the backseat "that was almost as long as the bench seat itself." *Id.* He could not determine what the object was because it was covered with a brand-new USA veterans support flag. *Id.* He also saw a "brand new still rolled up" American flag in the backseat area, and two new magnets attached to the rear of the car: a California state flag and one depicting support for doctors, nurses, police, fire, dispatchers, EMS and military. *Id.* Bridges noted that rear window magnets are not commonly seen on rental vehicles. *Id.*

Bridges also talked to Diaz-Garcia's passenger, Rodman Andres Duran Garcia ("Duran") who told Bridges they had been in California visiting friends and family. ECF No. 11-1 at 41. Duran's voice was shaky and he would only give broad answers to basic questions. *Id.* Duran identified himself with a Colombian passport. *Id.*

Bridges then asked Diaz-Garcia to sit in the front seat of the patrol car. ECF No. 11-1 at 41. As he entered information into the mobile CAD system for routine checks and issuance of a warning for speeding, Bridges looked over the car rental contract. *Id.* Bridges

noticed that Diaz-Garcia was still very nervous—for example, his carotid artery was "pulsing hard and fast." *Id.* Diaz-Garcia told Bridges that they had been in California visiting friends and family, but he became increasingly irritated with Bridges' questions, which is "not common with the innocent motoring public." *Id.* Bridges was suspicious of Diaz-Garcia's explanation about his nervousness (that he was worried Duran was in the country illegally), and Diaz-Garcia remained excessively nervous even after Bridges told him that he was not interested in their immigration status. *Id.* at 41–42. Bridges asked Diaz-Garcia for permission to search the vehicle, but Diaz-Garcia refused. *Id.* at 42.

Bridges then radioed for a K-9 unit. ECF No. 11-1 at 42. The police report does not indicate how long they waited for the K-9 unit to arrive. Diaz-Garcia's *post hoc* declaration estimates that they waited between fifteen and twenty minutes. *Id.* at 50. The dog alerted to the vehicle, so Bridges conducted a probable cause search. *Id.* at 43. He found a plastic tote in the backseat containing several bundles covered in grease and pepper, a common packaging technique to mask the odor of illegal narcotics. *Id.* Diaz-Garcia and Duran were arrested. *Id.* Bridges' version of events is corroborated in the PSR. *See* ECF No. 57-1 ¶¶ 12-19.

The Court finds that Bridges had reasonable suspicion to prolong the stop based on the following: (1) Diaz-Garcia and Duran's excessively nervous demeanor; (2) the implausibility of Diaz-Garcia's story about Duran's immigration status; (3) the pro-American symbols on and in a rental car; and (4) Bridges' twenty-eight years of experience leading to the conclusion that Diaz-Garcia was acting more nervous than the "innocent motoring public." ECF No. 11-1 at 42. Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Smith*, 952 F.3d 642,

648 (5th Cir. 2020) (quoting *Arvizu*, 534 U.S. at 273–74). Considering the totality of the circumstances, it was reasonable for Bridges to suspect Diaz-Garcia was involved in criminal activity. *See United States v. Pack*, 612 F.3d 341, 361–62 (5th Cir. 2010) (holding that a defendant's extreme nervousness, conflicting stories, and presence on a known drug corridor, coupled with the arresting officer's experience, combine to establish reasonable suspicion).

Accordingly, Diaz-Garcia cannot support his argument that a motion to suppress would have been successful based upon a lack of reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968). And because Bridges had reasonable suspicion, the Court cannot hold counsel deficient for failing to file a motion to suppress. *See Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990). Failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Rather, the decision not to file a motion to suppress can be intentional and strategic. *United States v. Chavez-Valencia*, 116 F.3d 127, 134 (5th Cir. 1997). Diaz-Garcia provides nothing more than a *post hoc* assertion that he would not have pled guilty if his counsel filed a motion to suppress. *See* ECF No. 11-1 at 52. The contemporaneous evidence does not support his assertion.

Even if Diaz-Garcia had provided some contemporaneous evidence to support his claim, the Fifth Circuit also has listed several factors "relevant to determining whether a defendant would have gone to trial," aside from contemporaneous evidence. *Richburg*, 2025 WL 2254513 at *4 (quoting *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020)). Such factors include: "the risks he would have faced at trial," "his representations about his desire to retract his plea," and "the district court's admonishments." *Richburg*, 2025 WL 2254513 at *4 (citing *Valdez*, 973 F.3d at 402). Here, each factor weighs against a finding of prejudice.

If Diaz-Garcia had gone to trial, he would have faced an additional count that was dismissed by his plea agreement: conspiracy to distribute and possess with intent to

distribute cocaine, in violation of 21 U.S.C. Section 846. He would have faced up to twenty years imprisonment and a statutory fine of $1 million *on both counts. See* CR ECF No. 57-1 ¶ 85 and p. 1. Additionally, his sentencing guideline range would not have been reduced for his acceptance of responsibility. *See Lee*, 582 U.S. at 367 ("[A] defendant [without any viable defense] will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial . . . because defendants obviously weigh their prospects at trial in deciding whether to accept a plea" (citation omitted)). Further, as discussed in detail below, Diaz-Garcia's guilty plea was knowing and voluntary, and he made no effort to retract it.

Considering all the evidence, Diaz-Garcia has not shown a reasonable probability that he would have rejected the plea offer but for his counsel's failure to file a likely futile motion to suppress. *Lee*, 582 U.S. at 367 (citation omitted). The record shows that Diaz-Garcia "underst[ood] the consequences of a guilty plea." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990). Thus, he cannot prove prejudice. In addition, Diaz-Garcia's claim that the indictment would have been dismissed had counsel filed the motion to suppress is nothing more than speculation. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). Diaz-Garcia's ineffective assistance of counsel claim is waived by his guilty plea.

## II. Involuntary Guilty Plea

Diaz-Garcia next alleges that his counsel told him that, if he did not agree to plead guilty, the government would seek enhancements for possession of a dangerous weapon (due to a hammer found in his car) and his alleged leadership role in the operation. ECF No. 2 at 5. He also claims that counsel also told him that he "shouldn't get more than 78 months." *Id.*

Although Diaz-Garcia agreed to plead guilty to avoid the enhancements, he claims that, nevertheless, "the government sought to enhance." *Id*. At sentencing, the Court sustained Diaz-Garcia's objections to the enhancements; as a result, he was not prejudiced by counsel allegedly telling him that the government would not seek to enhance if he agreed to plead guilty.[3] Accordingly, the sole remaining issue is whether Diaz-Garcia was prejudiced by counsel's alleged representation that he "shouldn't get more than 78 months" if he agreed to plead guilty and whether such representation rendered his guilty plea involuntary.

Contrary to his assertions here, Diaz-Garcia's written plea agreement said his guilty plea was "freely and voluntarily made," and he swore under oath in open court that he read his plea agreement and that his plea was voluntary. *See* CR ECF No. 96 at 18, 20. Specifically, the plea agreement states:

> This plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court will impose.

CR ECF No. 39 at 5–6. In addition, Diaz-Garcia testified that no one threatened him or forced him to plead guilty. *Id*. at 20. The record shows that Diaz-Garcia never attempted to withdraw his guilty plea, which also indicates that his plea was knowing and voluntary.

Diaz-Garcia's claim that he relied on counsel's sentence estimate is nothing more than a contradiction of his sworn testimony given in open court. "When a defendant's [Section 2255] allegations contradict his sworn testimony given at a plea hearing, we have required more than 'mere contradiction of his statements.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1985)); *see also United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (prisoner seeking habeas

---

[3] The Court notes that the government agreed with defense objections to the enhancements at sentencing. *See* CR ECF No. 97 at 10–12.

relief based on alleged promise must prove "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise"). Diaz-Garcia provides no evidence of when and where an alleged promise was made, nor does he adequately identify a witness to the promise.[4] Diaz-Garcia has not shown ineffective assistance by his attorney.

Even assuming counsel promised Diaz-Garcia would not serve more than 78 months, Diaz-Garcia was not prejudiced by such promise. Diaz-Garcia testified in open court that he understood his plea agreement, and that *no one* promised him anything that was not contained in the plea documents. CR ECF No. 96 at 18–20. He acknowledged on several occasions that he understood the Court would decide his sentence. *Id.* at 26-27. His plea agreement states:

> The defendant understands that the sentence in this case will be imposed by the Court after consideration of the United States Sentencing Guidelines. The guidelines are not binding on the Court, but are advisory only. The defendant has reviewed the guidelines with the defendant's attorney, but understands no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case. The defendant will not be allowed to withdraw the defendant's plea if the defendant's sentence is higher than expected. **The defendant fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court.**

CR ECF No. 39 at 3 (emphasis added); CR ECF No. 96 at 29–30. Diaz-Garcia also testified that he was not relying on any other promises or agreements that were not contained in his plea agreement, and that no one promised him exactly what his sentence would be. CR ECF No. 96 at 19–20, 26, 30.

---

[4] Diaz-Garcia provides an affidavit from his "close friend," Mara Prestes, who states that counsel "told Mr. Diaz-Garcia that if he did not plea [*sic*] guilty, he would go away for a very long time; possibly even life in prison, but if he plead [*sic*] guilty, he would get a maximum of 78 months." ECF No. 11-1 at 55. However, the affidavit does not provide a proper foundation showing when and where Prestes heard the representation, or whether she merely relies on Diaz-Garcia's representations to her of his conversations with his attorney, which would be inadmissible hearsay.

Diaz-Garcia's solemn declarations in open court are entitled to a presumption of truth. *See Blackledge v. Allison*, 431 U.S. 63, 37–74 (1977); *see also United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) ("[S]olemn declarations in open court carry a strong presumption of verity.") (internal quotation omitted). His plea agreement and factual resume are entitled to the same presumption. *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985); *see also United States v. Lincks*, 82 F.4th 325, 330–32 (5th Cir. 2023) (even if counsel gave mistaken sentencing information to movant, movant was not entitled to relief because he disclaimed reliance on counsel's statements in his plea agreement). Diaz-Garcia's unsupported *post hoc* assertion that counsel promised a sentence of seventy-eight months, after he disclaimed reliance on counsel's statements in open court, does not support habeas relief.

### III. Failure to Investigate

Diaz-Garcia next argues that his trial counsel was ineffective for failing to investigate the drug weight attributed to him. ECF No. 2 at 7. He claims that, if he opted for a trial, "the drug report would have had to be testified to and the lab report reflects a discrepancy that alters the drug weight to less than 50 kilograms." *Id.* However, he does not specify the alleged discrepancy other than to state that he "did not have 50kgs or more" of cocaine. ECF No. 11-1 at 14. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Talamini*, 2013 WL 1197926 at *3 (N.D. Tex. 2013) ("Movant does not identify any further information that counsel could have uncovered that would have favorably changed the outcome of his case."). Diaz-Garcia does not allege what, if anything, the investigation would have discovered that would have changed the outcome of his case. He does not show the amount of cocaine he claims he had. The Court notes that, in the factual

13

resume signed by Diaz-Garcia in support of his guilty plea, he admitted that he had possessed cocaine "weighing approximately 50 kilograms" and that he "committed all the essential elements of the offense." CR ECF No. 38-3. Moreover, the drug weight was established by the PSR. *See* PSR ¶¶ 23, 31. Courts give factual findings in PSRs a "sufficient indicia of reliability" unless rebutted with competent evidence, which Diaz-Garcia failed to do. *United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010) ("Because no testimony or other evidence was submitted to rebut the information in the PSR the district court was free to adopt the PSR's findings without further inquiry or explanation."). In addition, Diaz-Garcia was not prejudiced because the Court at sentencing made it clear that, even if the sentencing guideline range was incorrect, it still would have imposed the same sentence under the Section 3553(a) factors. CR ECF No. 97 at 32–33. Diaz-Garcia's ineffective assistance of counsel claim fails.

### CONCLUSION

For the reasons stated above, Diaz-Garcia's motion to vacate (ECF No. 2) is **DENIED** with prejudice.

**SO ORDERED.**

July 7, 2026.

 

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE